We'll move to our second case, United States versus Coglianese or Coglianese, I'm not sure. We're gonna, let's see if we've got Miss McNamara with us. Oh yeah, there you are, sorry. Sometimes boxes are moving on the computer and I can't see where everyone is. Miss Fussell, if I pronounced that right? Yes, thank you, your honor. Good morning, your honors, and may it please the court. There are two sentencing issues I want to highlight today. First, the district court improperly considered the identity of the individual AUSA as a factor in sentencing. Second, the district court erred by imposing an objected to special condition that prohibited all electronic data storage mediums for 30 years. First, the identity of the individual AUSA impermissibly factored into the district court sentencing analysis. You know, it was an odd statement by the district judge, but I'll grant you that, although it does seem that perhaps what the district court was saying is, you know, sometimes they're, you know, are they so frequently asked for an upward variance that I don't give it much weight. This lawyer's not like that, but nevertheless, what does the district court do? Sentences at the bottom end of the guideline range. And below the recommendation of the prosecutor who asked for an upward variance. I think I'm with Chief Judge Pryor on my reading of the record in this case. Maybe the district court said something that was awkward, but then explained that the reason that the respect was being given to that AUSA was because she was not someone who came in, no matter what the circumstances, no matter what the offense, no matter what the defendant was always asking for a high-end sentence or an upward variance. And I will tell you from a district court perspective, and Judge Brown can comment on this if he wants. I mean, judges react that way to lawyers because as the chief said, they're repeat players. You get them in your court every single day in a range of cases and what they tell you in given circumstances leads you to sort of gauge what your reaction is to them. So at the end of the day, especially at the district court, given the upward variance at 210 months, I might feel differently about it, but the district court obviously did not follow the prosecutor's recommendation. Yes, your honor. I think I understand what you're saying, but this was not just an offhand remark. The court's consideration of the AUSA's identity amounted to a thumb on the scale. First, the court asked defense counsel to tailor his arguments to the prosecutor's recommendation because of its personal view of the prosecutor's reputation. And then defense counsel stated that the court should not consider the person saying it, but rather the entity and that the court should consider the facts and sentencing factors and not the prosecutor's credentials and making the that she disregards some who are always going to the high end and that essentially what she said was she's not disregarding this person's recommendation. I think it was more of a who she rejects, but moreover, I think immediately the judge says don't talk about the high end. I'm already rejecting that recommendation. I'm at low end of variance. So I just I think I'm where the other judges are that it might have been set in a way. But I don't I don't believe there's any reason to believe it was actually in any manner effective because the judge said it was not. Yes, your honor. So after defense counsel expressed concern, rather than even saying that it wasn't considering the prosecutor's credentials and making its or even dropping the matter, the court doubled down and again emphasized that it looks a lot at the particular person making the recommendation. Your honor's points are well taken that it is the case that they that the court ultimately went with a low end of the guidelines. I don't think that's fair. The judge said I don't think my comments early in any way and earlier in any way made me think that a high end guideline ranges in order. I'm looking at somewhere between the low end, the lowest end, which is what I would impose versus a slight downward variance. I don't think there could be anything clearer than I'm not giving that great way. I'm actually giving it very little weight because I'm already rejecting it from the very start of the hearing before before really anything is said. Your honor. So here the prosecutor, the prosecutor's reputation wasn't just, you know, a question of whether or not which which frame of reference the court was talking about with whether it was going to be the low end of the guidelines or a downward variance. Here, the district court actually acted as though it needed compelling circumstances to go with the low end of the guidelines rather than to upward vary. So here there was kind there was it did treat the AUSA's reputation as a thumb on the scale. And we would ask that the court vacate and remand for resentencing for that reason. But you might want to get to your other arguments. Yes, your honor. Second. So second, the district court abuses discretion by imposing an unreasonable special condition. Yesterday, the government filed a 28 J that argued for the first time that the condition does not reach all electronic data storage mediums. The government's new position contradicts its previous position that Mr. would need to seek probation approval for even certain thermostats. If I could, before you get to the government's arguments, do you think that the supervised release restriction as stated at the sentencing hearing allowed probation office approval to deviate? Like, for example, for work? Listen, I have a job. My job requires me to use a computer. And as long as you install the software on it and check on it and do that, I need to use a computer to work. Do you think, as stated at the sentencing hearing, Mr. Koblenz could have gotten or sought probation office approval for that use of a computer? Yes, your honor for a computer? Yes. It's very clear that prior approval is contemplated for a computer. It's not so clear that it is contemplated for an electronic data storage medium. And that creates kind of a contradictory issue with the condition. Because of course, no computer exists without an electronic data storage medium. And that's probably why in a third circuit case, the government actually conceded that this very similar language is contradictory positions in this case is evidence that remand is badly needed. However, to the extent that the government concedes the condition should only apply to devices capable of electronically storing images that sexually exploit minors, Mr. Colonies simply asked for remand to clarify that condition. If the government does not concede the problem, you know, so that the so what we have here is a reference to electronic storage media, which if you consider that in isolation, I will agree with you, that could include, for example, technically, something like in as innocuous as a musical birthday card. But the problem is, we can't read it in isolation, we read it in context. And and it is followed by a reference to devices like a flash drive, a computer desk, a floppy disk, they make that it makes it clear that what this is referring to is our devices that have as their primary purpose, the storage of data for retrieval on a computer. Respectfully, Your Honor, I don't read it to be clear in that way. I mean, lots of those types of memories described are not clearly distinguishable from the examples in our briefs. And further, even the government acknowledged that it would apply to things like a thermostat or home alarm system, with a primary purpose of which is not for data retrieval on the computer. So if if that is the court, this court's view, then we would ask for remand to clarify to that effect, because that's not how we read the condition. And that's not how the government originally read the convention, the condition until yesterday. So the government proposes a new methodology that's problematic and unsupported by the law in order to derive the common sense meeting. The government seemingly contends that the common sense meaning of words in special conditions should vary depending on the circumstances of the case. The government's methodology would mean that if Mr. Colonies was convicted of a financial internet crime, a condition with identical language would mean something totally different. The government now claims the condition only applies to computers and similar devices that function like computers, or data storage mechanisms in the sexual exploitation of children, the government. So I haven't, I haven't gone back to this aspect of the record to try to match things. But did the probation officer recommend this sort of restriction during supervised release? And if so, did the language differ? Or was it much more generic in nature? Yes, Your Honor. So the probation officer did recommend a computer condition, but nothing the probation officer said contemplated something that would reach electronic data storage mediums with no limiting provision at all, other than potentially prior probation officer approval. The government does not appear to dispute that a medium capable of storing electronic data is the ordinary meaning of electronic data storage medium. Beyond its alternative and subjective methodology, the government offers no reason as to why Mr. that ordinary meaning. The government now seems to think that it's unreasonable for a special condition to prohibit all electronic data storage mediums, even subject to probation officer approval. Mr. Colonies agrees, imposing it with no explanation and without consideration of 3553 is error under any state and error under any standard of review. So Mr. Colonies respectfully requests that this court vacate the judgment and remand for resentencing. And if there's no other questions, then we're happy to conclude and reserve the remainder of time for rebuttal. Got four minutes that you've reserved, Miss McNamara. Good morning, and may it please the court. When Mr. Colonies is released from prison in 11 years, the probation officer will meet with him as statutorily required, and as guided by this provision will hash out with him the types of computers and data storage devices he can and type of devices will even be available then and during his 30 year term of supervised release remains to be seen. But the flexibility this condition provides to deal with this is precisely why this court has affirmed the reason others like it many times, most recently last summer in Gruber and Bush, this very condition. And we think right in the mirror, do you do you think that so you I take it from your position that you think the probation officer once Mr. Colonies is released, has the authority to allow the use of any of the devices or things that are restricted every single one of them, right? Yes, we do. We do. And without without limitation. Correct. I mean, and that's the judge prior's point that you have to read this provision in context. And, you know, this is in a separately numbered paragraph that begins with the computer and internet restriction that talks about without probation officer approval. And then it goes on to discuss data storage devices. But that's my point that the approval language is sort of paragraph without being at least clearly enunciated to apply to every single restriction. And so that's why I wanted to get your views on whether or not the approval possibility applied to every restriction in the term. Yes, I mean, that's the way we interpret it. And I and I can tell you that in practice, I believe that is the way it is enforced. This provision has been applied this exact position provision has been applied dozens, if not hundreds of times in the Middle District of Florida, in both child exploitation cases, but also in cases involving computer crimes. And if we say, if we say that that is in context, the reasonable interpretation on how we read it, you have no objection to that. Absolutely not. We think that that is the reasonable interpretation of it. And that's why, and that's why it's okay. And that and that, you know, ultimately, the probation officer will have to say, yeah, you can use this, you can use that. And if he and if the probation officer one day says you can't use your alarm clock, because it's an electronic data storage device, you can't use clock pot. Well, I think he's going to be able to challenge that position, sure. And either move for modification or or an interpretative interpretation by the district court, which will interpret it in a reasonable fashion to not include those things. And then we are conditioning in Florida, because that involves a thermostat, right? I mean, and you know, what I've said about that was was really intended to that this will get hashed out, you know, in 2031, when he meets with his probation officer, and the probation officer will go over these provisions with him, and will explain to him what they mean, and how these this provision will be enforced. And, and that's the type of flexibility you just have to have with a provision dealing with constantly changing technology. I mean, he can't the district court can't be expected to to exhaustively list what might or might not be in place at that time. And he always has a remedy. I mean, we should not assume that the probation officer is going to apply it in these these absurd manners that she suggests that might happen here. We should not be imagining I mean, this court in zinc and other cases has said that we should assume that the probation officer will provide apply these types of provisions. In reasonable manners that relate to the 3550 VA factors and the offensive conviction. So that's why we think there's no problem with any part of this provision. Now, I just will very briefly address the other argument with respect to what the district court said during the sentencing hearing and and really, you also made my point on that. That is that most lawyers learn early in their careers to avoid making every conceivable argument regard regardless of the relative merit of the argument. And we learn that when we do that two things might happen, our merit, most meritorious my arguments might get lost in the weak arguments. And we also risk losing credibility with court, then it's better to pick and choose our best arguments in the hope that the court will take those arguments seriously, and know that they might have merit. Well, I would especially hope that a prosecutor does that since prosecutors have a unique role as ministers of justice, and not mere advocates. Absolutely agree with that 100%. And the prosecutor in this case had apparently earned that reputation with the district court of taking the better approach. And so when she uncharacteristically argued that the application of this defendant who had pleaded guilty, that put the district court on high alert, that there might be something to that argument. And it's not so much high alert, the district court didn't discount it as it would some lawyer, some prosecutor who hasn't learned the lesson. Well, that's right. And to the defendant's benefit, she shared with him her intention to take a close look at that argument and ask him to address that argument. And there was nothing, nothing wrong with that. And apparently did so persuasively. That's right. I mean, and she did. And she, she praised him several times for his, for his presentation, and ultimately said she had that he had convinced her. You know, when you look through the sentencing transcript, you will see she carefully goes through this section 3553A factors. And you will see that the prosecutor's reputation had nothing to do with the sentence that she ultimately posed, certainly was not treated as a sentencing fact. Any other questions? I will save my time on the board. We always appreciate that. Ms. McNamara. Ms. Feasel, you've got four minutes. Thank you, Your Honor. So to start, the government now appears to contend that the plain language of the condition is so absurd that no reasonable probation officer would enforce it. But Mr. Carlini's argues that that shows how unreasonable the language is the notion that the probation What if we say that in context, that that it should be reasonably interpreted this way. And we issue an opinion that says that. No, no, no problem there, right? Correct, Your Honor. It's hard to tell what the government's new reversal means its position is. But I'm just asking you for your purposes. Yes, Your Honor purposes that that settles everything and and we can move on, right? Yes, Your Honor, if this court would issue an opinion saying that this condition should be interpreted reasonably such as to only apply to electronic data storage mediums that are capable of storing photos, for example, of child exploitation, then Mr. Carlini's would have no issue with that. That is the subject of this appeal. And now, although the government you need, do you need to go that far? Or do you just need to say at this stage of the proceedings, in an opinion, that the restriction that all the restrictions are subject to probation officer approval? Well, Your Honor, I mean, if that's if the district court had said that clearly, right, and I grant you that the language could have been written could have been said differently could have been written differently. But if the district court had made it abundantly clear that for every restriction, you could go to the probation officer for approval. Your argument on constitutionality would not be the same, right? Or unreasonable, this would not be the same. Well, Your Honor, so correct to an extent. So if if it had like going with the government's previous argument, that probation approval was somehow a savings clause, it would make the condition more reasonable than it seems to be. However, that would be a huge burden for the defendant to actually have to repeatedly seek private approval for all of these devices, which the government contended included things like thermostats. So although the government has reversed its position now, the reversal shows how difficult to understand this condition apparently is. And so yes, we would ask that it is clarified to show that it really only applies to photos. If that's, you know, if that's what the intent behind the court's action was, we cannot determine that because there aren't meaningful differences between the types of the types of electronic data storage mediums that are described in the government's brief, and the ones in our brief. So it's difficult to say how the probation officer would actually enforce this. And further, that the court shouldn't or Mr. Colony shouldn't have to entirely rely on the probation officer's electronic data storage medium, it would make much more sense to remand for clarification. So it's clear from the outset, what the court is actually intending to prohibit. And if there are no other questions, Mr. colonies respectfully request that this court remand for clarification if not for a new consideration of the 3553 factors and for an explanation of the court's reasoning behind imposing this special condition. Thank you, Mr. So we have your case and we're